# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | **CRIMINAL COMPLAINT** |
| v. | : | Hon. Madeline Cox Arleo |
| RABINDER SINGH | : | Mag. No. 13-8328 |

     I, Michael A. Scimeca, the undersigned complainant being duly sworn, state the following is true and correct to the best of my knowledge and belief. From on or about September 25, 2013 through on or about October 4, 2013, in Middlesex County, in the District of New Jersey, and elsewhere, defendant RABINDER SINGH did:

> knowingly and willfully conspire to obstruct, delay, and affect commerce and the movement of articles and commodities in commerce by extortion, as those terms are defined in Title 18, United States Code, Section 1951, and threaten physical violence to any person, that is, by conspiring to obtain property from another, with that person's consent, induced by wrongful use of actual or threatened force, violence, or fear.

     In violation of Title 18, United States Code, Sections 1951(a) and 2.

     I further state that I am a Special Agent with the Federal Bureau of Investigation, and that this complaint is based on the following facts:

SEE ATTACHMENT A

_____
Special Agent Michael A. Scimeca
Federal Bureau of Investigation

Sworn to before me and subscribed in my presence,
October 8, 2013 at Newark, New Jersey

HONORABLE MADELINE COX ARLEO
UNITED STATES MAGISTRATE JUDGE

_____
Signature of Judicial Officer

## ATTACHMENT A

I, Michael A. Scimeca, am a Special Agent with the Federal Bureau of Investigation. I am fully familiar with the facts set forth herein based on my own investigation, my conversations with other law enforcement officers, and my review of reports, documents, and items of evidence. Where statements of others are related herein, they are related in substance and part. Because this complaint is being submitted for a limited purpose, I have not set forth each and every fact that I know concerning this investigation. Where I assert that an event took place on a particular date, I am asserting that it took place on or about the date alleged.

1. In or around May 2012, the Victim purchased a commercial business in Brooklyn, New York (the "Property") from an individual ("Co-conspirator 2"). The Victim paid a portion of the purchase price at the time of the sale and agreed to pay Co-conspirator 2 the balance of the purchase price over a period of time.

2. On or about September 25, 2013, two males went to the Victim's residence in Middlesex County, New Jersey and told a family member of the Victim that they were there to collect money from the Victim for the Property.

3. On or about September 30, 2013, the Victim received telephone calls from an individual ("Co-conspirator 1"). Co-conspirator 1 referred to the two men that visited the Victim's residence on or about September 25, 2013 and informed the Victim that Co-conspirator 1 and his/her associates were hired to collect approximately $800,000 from the Victim. Co-conspirator 1 told the Victim that the money, among other things, would be applied to the balance of the purchase price for the Property.

4. Co-conspirator 1 threatened the Victim by stating, in substance and in part, that Co-conspirator 1 would bang the Victim's head if the Victim did not pay the $800,000. Co-conspirator 1 further stated that he/she did not want the Victim's family to see this happen, and that he/she did not want to go to the "next level."

5. Based on Co-conspirator 1's threats, the Victim agreed to make an initial payment of approximately $200,000 on or about October 1, 2013. Co-conspirator 1 instructed the Victim to deliver the payment to an accountant, whom both the Victim and Co-conspirator 2 used, and to confirm with Co-conspirator 1 afterward that the Victim made the payment. Co-conspirator 1 told the Victim that the Victim must pay the remainder of the $800,000 by October 4, 2013. The Victim subsequently withdrew approximately $200,000 from the Victim's bank accounts to pay the demand.

6. On or about October 1, 2013, Co-conspirator 1 made additional threats to the Victim in a series of telephone calls, voice messages, and text messages. During the calls, some of which were recorded, Co-conspirator 1 stated, among other things, that "[w]hen they say they're going to your house at 9 o'clock to shoot you in the head, they'll be at your house at 9 o'clock to shoot you in the head," and that, hopefully, the issue would be resolved so that the victim "won't have any problem." Co-conspirator 1 warned the Victim to follow his/her orders,

because he/she was the person who would stop these people from going to the Victim's residence.

7. The Victim did not deliver any checks to the accountant on or about October 1, 2013.

8. On or about October 4, 2013, Co-conspirator 1 continued his/her threats to the Victim in a series of telephone calls and text messages. During one of these calls with the Victim, which was recorded, Co-conspirator 1 repeated his/her demand for money and told the Victim that if it were up to him/her, he/she would either burn the Victim's residence or hurt the Victim's family while they were out shopping.

9. On or about October 4, 2013, Co-conspirator 1 had a telephone conversation with Co-conspirator 2, which was recorded. During the conversation, Co-conspirator 2 stated that the Victim was supposed to bring a check that day but did not do so, and instead was attempting to bargain. Co-conspirator 2 instructed Co-conspirator 1 to call the Victim and ask why the Victim did not pay. At another point in the conversation, Co-conspirator 2 instructed Co-conspirator 1 to do "[w]hatever [he/she was] doing before." Co-conspirator 2 stated that he/she would call defendant RABINDER SINGH and tell him to contact Co-conspirator 1.

10. On or about October 4, 2013, Co-conspirator 1 had a telephone conversation with defendant RABINDER SINGH, which was recorded. During the conversation, defendant RABINDER SINGH acknowledged that he hired Co-conspirator 1 to collect from the Victim. Defendant RABINDER SINGH stated that Co-conspirator 2 called him two or three times that day to get updates, and wanted to be informed of any developments. Co-conspirator 1 told defendant RABINDER SINGH that the Victim was afraid for his family and was scared that someone would return to the Victim's residence. When asked for his input, defendant RABINDER SINGH stated, "[y]ou shouldn't ask me, ... you should be telling me." Defendant RABINDER SINGH reiterated that Co-conspirator 1 should be "very aggressive." Defendant RABINDER SINGH told Co-Conspirator 1 that he would "give this case to somebody else, if you cannot handle it."

11. Law enforcement obtained subscriber information and toll records associated with defendant RABINDER SINGH's phone and Co-conspirator 1's phone. The records show numerous calls between the co-conspirators during the period of September 20, 2013 to October 4, 2013, including calls before and after the various threats made to the Victim.